```
               UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF MISSISSIPPI
                      EASTERN DIVISION


CAROLYN WILLIAMS                                        PLAINTIFF


VS.                               CIVIL ACTION NO. 4:03CV88LN


EDWARD A. WILLIAMSON, INDIVIDUALLY,
AND EDWARD A. WILLIAMSON, P.A.,
AND MICHAEL J. MILLER                                  DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Carolyn Williams for partial summary judgment and on the motion for summary judgment filed by defendants Edward A. Williamson, individually, and Edward A. Williamson, P.A. (collectively Williamson), and joined by defendant Michael J. Miller. These motions have been fully briefed by the parties, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that both motions should be denied.

Plaintiff is one of a number of individuals who were represented by defendants Williamson and Miller in pursuing a products liability claim against American Home Products Corporation (AHP) for damages allegedly sustained from taking the prescription drug Phentermine and Fenfluramine/Desfenfluramine (Phen-Fen). Defendants negotiated a settlement of a number of their clients' claims Fen-Phen against AHP, the drug's

manufacturer, which culminated in Carolyn Williams' receiving a net settlement of $502,340.78. This figure, as set forth in a "disbursement statement" presented to and executed by plaintiff, was calculated as follows:

```
Settlement Amount $1,000,000.00
Attorney's fees: (45%) 450,000.00
MDL fees 3% 30,000.00
MTLA Contribution: -0-

EXPENSES:
Miller & Associates (Case Specific) 296.09
The Williamson Law Firm (Case Specific) 1,585.23
Generic Expenses: 15,777.90
TOTAL EXPENSES: 17,659.22

NET TO CLIENT: $ 502,340.78
```

It is undisputed that in connection with defendants' settlement negotiations, Williams agreed with defendants that she would be willing to settle her claim against AHP for a net payment of $500,000. It is further undisputed that she signed the disbursement statement below a paragraph which stated, "I have read the above statement of cost and distribution of settlement and I agree to the terms of this disbursement." Despite this, however, Williams filed the present action against Williamson and Miller, alleging claims for malpractice, breach of fiduciary duty and breach of contract relating to Williamson's and Miller's disbursement/allocation of settlement funds, fees and expenses in the settlement of the underlying Fen-Phen litigation. More specifically, plaintiff herein claims that although defendants represented the proposed settlement to her as an individual

2

settlement of her individual claim, in fact, what was involved was a global settlement of all (or a substantial number) of defendants' numerous clients' Fen-Phen claims.  She contends that defendants failed to disclose that they were responsible for allocating the global settlement funds, which totaled $55,000,000, among their numerous clients, and thus failed to disclose that they were operating under a conflict of interest in allocating the funds, and they further failed to disclose the manner or method of allocating these funds.  She claims that defendants did not reasonably and fairly allocate the settlement funds, and in fact, divided up the funds in such a way that some clients with lesser injuries than hers received a greater share of the settlement than she, and she claims that with respect to her in particular, defendants did not adhere to the allocation formula which they now claim to have used, with the result that she received less than she would have had they done so.  Finally, she claims that defendants charged her and their other clients involved in the settlement with "common expenses" or fees that were not properly chargeable to them, and allocated to her a greater share of the supposed "common expenses" than was proper or supportable.

   In their motion for summary judgment, defendants argue that "[b]y the plain language of the contract (i.e., the disbursement statement), Williams agreed to and accepted all figures that were displayed in the disbursement statement," so that

she may not now contest the allocation and/or disbursement of settlement funds.[1]  They argue that plaintiff's claims against them are foreclosed by the "contract" and/or by principles of waiver and estoppel.  They contend, however, that in any event, plaintiff has no actionable claim, principally because she cannot show that she suffered any injury resulting from defendants' representation, prosecution and settlement of her claim against AHP.

In the court's opinion, the fact that plaintiff signed a statement by which she purported to approve the settlement and "agree to the terms of th[e] disbursement" does not necessarily foreclose her claims in this case.  Defendants, as her attorneys, clearly had a fiduciary duty to Williams, which entailed an

---

[1] The paragraph stated, in toto, as follows:
I, the undersigned [Carolyn Williams] agree to accept the above settlement regarding my case against American Home Products, et. al. and my attorneys have informed me of my rights and options regarding this matter. The settlement of the above case was made with my consent and approval.  I have read the above statement of cost and distribution of settlement and I agree to the terms of this disbursement.  I acknowledge receiving a copy of this statement. I understand that I am personally responsible for the payment of medical bills incurred by me in connection with this claim, including but not limited to liens or subrogation claims from any insurance company or governmental agency.  I further agree to hold the law office of Miller & Associates, The Williamson Law Firm, Blackmon & Blackmon and any other attorney associated with my case harmless from any medical, hospital, nurses or other liens or claims which may exist now or in the future in connection with this matter.

obligation to "render a full and fair disclosure" of all facts material to their representation. Smith v. Sneed, 638 So. 2d 1252, 1257 (Miss. 1994) (citations omitted). Moreover, the Mississippi Supreme Court has recognized that,

> It is the prevailing rule that, as between persons sustaining a fiduciary or trust or other confidential relationship toward each other, the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff (the other party), and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act. . . .

Turnley v. Turnley, 726 So. 2d 1258, 1262 (Miss. Ct. App. 1998). Finally, a party is not bound by an agreement procured by fraud. Thus, to the extent defendants' motion is based on their contention that plaintiff's signing the disbursement agreement and accepting the $502,340.78 in settlement funds forecloses her claims, their motion must fail, for it does not account for any of these principles.

Defendants contend, alternatively, that even if the disbursement statement is no impediment to her claim, plaintiff has no legally cognizable claim against them in any event. The Mississippi Supreme Court has explained that a legal malpractice claim may be based on a breach of either the standard of care of exercising the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, or the breach of a fiduciary duty (i.e., breach of a

5

standard of "conduct"). Hartford Acc. & Indem. Co. v. Foster, 528 So. 2d 255, 285 (Miss. 1988). If the claim is for violation of the standard of care, i.e., professional negligence, the plaintiff/client must prove the existence of an attorney-client relationship, the acts constituting negligence, that the negligence proximately caused the injury, and the fact and extent of the injury. Lane v. Oustalet, 873 So. 2d 92, 98-99 (2004) (quoting Hartford, 528 So. 2d at 285). To recover for violation of the standard of conduct, that is, for breach of fiduciary duty, the elements are the same as for other legal malpractice actions, except that instead of proving negligence, the claimant must prove a violation of the attorney's fiduciary duty, id. (quoting Hartford, 528 So. 2d at 285), so that the plaintiff must prove the existence of an attorney-client relationship, an act or acts in violation of the attorney's fiduciary duty, that the violation of that fiduciary duty caused injury, and the fact and extent of the injury, id.

 Defendants argue that plaintiff cannot prevail on any claim for breach of the standard of care, because she cannot prove any acts by any defendant that amount to negligence and because she cannot show that she was injured in any way by defendants' representation. They further maintain that she cannot prevail on her breach of the standard of conduct/fiduciary duty claim because she cannot prove any injury. In support of their position,

defendants argue that their securing a $1,000,000 settlement for plaintiff, from which she netted over $500,000, an amount for which she admittedly agreed she would settle, could hardly be said to qualify as negligence. On the contrary, they insist, this was a highly successful result for Williams, especially considering that her claim, in particular, was vulnerable to challenge by AHP on the basis that she had failed to timely opt out of a national class action. Defendants note that if Williams' claim had been included in the national class action, she would have been foreclosed from pursuing an individual claim against AHP, and as part of the national class action, would have received, at most, a settlement of only $10,000.[2] They note further that Williams agreed, at the commencement of settlement negotiations, that she

---

[2] The facts relative to plaintiff's failure to timely opt out of the national class action, and the potentially fatal effect on that failure to her ability to pursue her claim individually, do not appear in dispute. Plaintiff, however, denies that this fact had any bearing on the settlement negotiations with AHP and has presented evidence in support of her position. There may be some appeal to defendants' argument that the fact that they were able to achieve any settlement for this plaintiff is, in itself, is a testament to the success of their representation; and the fact that they were able to secure for her a settlement 100 times greater than that which she would have received as a member of the national class is conclusive proof that she suffered no harm from their representation. However, that appeal is largely superficial, for assuming that AHP treated Williams' claim as being on equal footing with the claims of defendants' other clients in negotiating a settlement of the claims, defendants, as fiduciaries, could not themselves have treated her claim otherwise once she became their client and a part of their settlement negotiations.

7

would accept a gross settlement of $300,000 to $600,000, and yet in the end, received a gross settlement of $1,000,000, which resulted in a net payment to her of more than $500,000.  It is clear from these facts, according to defendants, that plaintiff cannot show she suffered any harm whatsoever from any act or omission by defendants.

This plaintiff did agree that she would be willing to settle her claim for $500,000, and there is nothing to suggest that this was other than a fair and reasonable settlement of her claims.  In the court's view, however, it does not follow from this that plaintiff cannot prove that she suffered harm.  It is undisputed that defendants obtained a settlement from AHP that exceeded the aggregate of minimum amounts each of their clients agreed to accept, resulting in a substantial amount of "excess" funds to be allocated by defendants.  Accepting defendants' argument, so long as each client received the minimum amount he or she agreed to take in settlement, none of them could have been harmed by even a grossly unfair allocation of the excess funds, even though a grossly unfair allocation would clearly have constituted a breach of their fiduciary duty to their clients.  That is hardly sound reasoning.

Moreover, plaintiff argues that while defendants profess a reasonable, objective methodology for their allocation of the settlement funds, it is not clear that there was, in fact, any

such methodology, and moreover, defendants admit they did not follow this methodology <u>as</u> <u>to</u> <u>her</u> as a result of which she claims she was harmed. According to plaintiff, whereas defendants claim to have divided the settlement funds by allocating to each plaintiff the minimum amount he/she had agreed to accept, and then allocating to each plaintiff his/her pro rata share of the excess, defendants did not follow this procedure as to Williams. Instead, when she balked at the amount they initially represented to her as her share of the settlement, they "upped" that amount – but according to plaintiff, this amount was less than what she would have received had they followed their professed allocation methodology. If plaintiff were successful in proving this scenario, then certainly, she could establish harm. As fiduciaries, defendants at least had an obligation to inform plaintiff of her options, i.e., to accept the $1,000,000 gross or to accept her minimum agreed amount and pro rata share of the excess, which, again, according to plaintiff, would have exceeded the $1,000,000.

    The fact is, however, that the court cannot conclude from the record, and on the basis of the arguments advanced by defendants, that as a matter of law, plaintiff has no viable claim against defendants. Although there are some undisputed facts, there are clearly disputed material facts, the existence of which precludes summary judgment for defendants at this time.

The existence of disputed facts also precludes plaintiff's request for partial summary judgment on the issue of misappropriation of expenses. In her motion, plaintiff takes the position that certain expenses were improperly included in the "common expenses" and that she was charged more than her proper share of common expenses. In response to plaintiff's motion, defendants argue that plaintiff is not entitled to summary judgment as to common benefit expenses because the terms of the disbursement statement, as well as principles of waiver and estoppel, bar her claim, and that even if not, there is hardly a lack of dispute in the facts pertinent to this issue. Indeed, it is clear from a review of the record evidence that plaintiff is not entitled to summary judgment on this claim. Defendants maintain, in this regard, and have presented evidence in support of their position, that no expenses were intentionally charged to any plaintiff or client which Williamson's bookkepper did not believe were legitimate, properly chargeable expenses and they insist that the allocation of expenses was reasonable. There are, at the least, substantial issues of material fact precluding summary judgment on the claim.

Neither is plaintiff entitled to summary judgment on her claim seeking an adjudication that defendants violated various provisions of the Mississippi Rules of Professional Conduct in the manner in which her settlement was determined and thereby breached

10

their fiduciary and contractual duties to plaintiff.  The preamble to the Mississippi Rules of Professional Conduct states clearly that they are not intended to establish the standard of care in litigation between an attorney and a former client, stating as follows:

> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached.  The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  They are not designed to be a basis for civil liability.  Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.  The fact that a Rule is just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.  Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extradisciplinary consequences of violating such a duty.

Mississippi Rules of Professional Conduct, Preamble, "SCOPE." Referencing this language, the Mississippi Supreme Court has observed:

> This language clearly demonstrates that the Rules of Conduct are to be used in disciplinary proceedings and the sanctions are to be determined and imposed by the governing body of all lawyers, i.e., the Supreme Court of the State of Mississippi and not a jury.

Owen v. Pringle, 621 So. 2d 668, 669 (Miss. 1993).  See also Wilbourn v. Stennett, Wilkinson & Ward, 687 So. 2d 1205, 1216 (Miss. 1996) ("The Code of Professional Conduct is not used as a measuring stick to determine civil liability for legal

11

malpractice."). Plaintiff's motion, as it seeks to impose liability against defendants for alleged violation of the Rules of Professional Responsibility, will be denied.

Based on the foregoing, it is ordered that plaintiff's motion for partial summary judgment is denied, and defendants' motion for summary judgment is likewise denied.[3]

SO ORDERED this 6th day of January, 2006.

/S/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[3] There are other related motions pending, including a motion by plaintiff to strike Williamson's summary judgment motion, which will be denied; a motion by defendant Williamson to file his summary judgment motion out of time, which is granted; a motion by Williamson to strike the second supplement to plaintiffs' response to the motion for summary judgment, which will be denied.

12